1  SANDFORD L. FREY (State Bar No. 117058)
   CREIM MACIAS KOENIG & FREY LLP
2  633 W. Fifth Street, 51st Floor
   Los Angeles, CA  90071
3  (213) 614-1944 Telephone
   (213) 614-1961 Fax
4  sfrey@cmkllp.com

5  Reorganization Attorneys for Story Building, LLC,
   Debtor and Debtor in Possession

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 [SANTA ANA DIVISION]

11  In re                          )  CASE NO.:  8:10-bk-16614-ER
                                   )
12                                 )  Chapter 11
                                   )
13  STORY BUILDING LLC,            )  **DISCLOSURE STATEMENT**
                                   )  **DESCRIBING CHAPTER 11 PLAN**
14      Debtor and Debtor in Possession.  )  **OF REORGANIZATION PROPOSED**
                                   )  **BY DEBTOR, STORY BUILDING**
15                                 )  **LLC**
                                   )
16                                 )  [*Dated November 12, 2010*]
                                   )
17                                 )
                                   )
18                                 )
    _____)

19

20

21

22

23

24

25

26

27

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................2

II.  DEFINITIONS AND RULES OF CONSTRUCTION ......................................2

   A.   PURPOSE OF THIS DOCUMENT .................................................................3

   B.   DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION
      HEARING ...........................................................................................................4

      1.   Time and Place of the Confirmation Hearing...............................4

      2.   Deadline for Voting For or Against the Plan................................5

      3.   Deadline for Objecting to the Confirmation of the Plan .............6

      4.   Identity of Person to Contact for More Information Regarding
         the Plan .............................................................................................6

   C.   DISCLAIMER ....................................................................................................7

III. BACKGROUND ....................................................................................................8

   A.   DESCRIPTION OF THE DEBTOR .................................................................8

      1.   Debtor's Principal ...........................................................................9

   B.   HISTORY OF THE DEBTOR ........................................................................10

   C.   EVENTS LEADING TO CHAPTER 11 FILING ........................................10

   D.   SIGNIFICANT EVENTS DURING THE BANKRUPTCY .......................11

      1.   Employment of Professionals ......................................................12

      2.   341(a) Hearing ...............................................................................12

      3.   Cash Collateral Motions ...............................................................12

      4.   Adequate Protection Payments ....................................................13

      5.   Plan Deadline/Exclusivity ............................................................14

      6.   Bar Dates ........................................................................................14

      7.   Legal Proceedings..........................................................................14

   E.   DESCRIPTION OF THE DEBTOR'S ASSET .............................................16

      1.   Real Estate. .....................................................................................16

      2.   Personal Property...........................................................................20

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

i

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

IV.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........................ 21

   A.   GENERAL OVERVIEW ................................................................................. 21

   B.   UNCLASSIFIED CLAIMS ............................................................................. 21

      1.   Administrative Expenses ............................................................. 21

      2.   Priority Tax Claims ..................................................................... 25

   C.   CLASSIFIED CLAIMS AND INTERESTS ........................................................ 26

      1.   Classes Of Secured Claims ......................................................... 26

      2.   Classes of Other Secured Claims ................................................ 40

      3.   Classes Of Priority Unsecured Claims ........................................ 42

      4.   Classes Of General Unsecured Claims ....................................... 42

      5.   Class of Interest Holders ............................................................. 45

   D.   MEANS OF EFFECTUATING THIS PLAN ...................................................... 46

      1.   Funding For This Plan ................................................................. 46

      2.   Post-Confirmation Management .................................................. 47

      3.   Claims Resolution Process .......................................................... 47

      4.   Disbursing Agent/distributions ................................................... 48

      5.   Miscellaneous Issues Regarding Plan Distributions ................... 48

      6.   Execution of Documents .............................................................. 49

V.   TREATMENT OF MISCELLANEOUS ITEMS ................................................... 50

   A.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................... 50

      1.   Assumptions ................................................................................. 50

      2.   Rejections .................................................................................... 50

   B.   CHANGES IN RATES SUBJECT TO REGULATORY COMMISSION APPROVAL ... 50

   C.   RETENTION OF JURISDICTION ................................................................... 51

   D.   RESERVATION OF RIGHTS/LITIGATION ..................................................... 52

   E.   POST CONFIRMATION U.S. TRUSTEE FEES AND IDENTITY OF THE ESTATE
      REPRESENTATIVE ..................................................................................... 53

   F.   POST-CONFIRMATION CLAIMS OF DEBTOR ............................................... 53

VI.    OTHER PLAN PROVISIONS .................................................................................. 53

    A.    EXCULPATION:  NO LIABILITY FOR SOLICITATION OR PROSECUTION OF
          CONFIRMATION. .............................................................................................. 53

    B.    REVOCATION OF PLAN/NO ADMISSIONS. ........................................................ 53

    C.    EXEMPTION FROM CERTAIN TRANSFER TAXES ............................................... 54

    D.    LOCAL RULES 3020-1(B). ............................................................................... 54

    E.    SUCCESSORS AND ASSIGNS. ............................................................................ 54

    F.    SATURDAY, SUNDAY OR LEGAL HOLIDAY. ..................................................... 54

    G.    HEADINGS. ...................................................................................................... 55

    H.    SEVERABILITY OF PLAN PROVISIONS. .............................................................. 55

    I.    GOVERNING LAW. ............................................................................................ 55

    J.    NO DISTRIBUTION WITH RESPECT TO DISPUTED CLAIMS ............................... 55

    K.    SETOFF, RECOUPMENT AND OTHER RIGHTS. .................................................. 56

VII.   CONFIRMATION REQUIREMENTS AND PROCEDURES ................................... 56

    A.    WHO MAY VOTE OR OBJECT .......................................................................... 56

          1.    Who May Object to Confirmation of the Plan ................................... 56

          2.    Who May Vote to Accept/Reject the Plan ......................................... 57

          3.    Who is Not Entitled to Vote .............................................................. 57

          4.    Who Can Vote in More Than One Class ............................................ 58

          5.    Votes Necessary to Confirm the Plan ................................................ 59

          6.    Votes Necessary for a Class to Accept the Plan ................................ 60

          7.    Treatment of Nonaccepting Classes ................................................... 60

          8.    Request for Confirmation Despite Nonacceptance by Impaired
                Classes ............................................................................................... 60

VIII.  LIQUIDATION ANALYSIS/BEST INTEREST TEST ............................................ 60

IX.    FINANCIAL INFORMATION ................................................................................ 62

    A.    FEASIBILITY ................................................................................................... 62

          1.    Cash on Effective Date ...................................................................... 62

          2.    Future Feasibility ............................................................................... 63

3.    Story Building Property ........................................................63

B.    RISK FACTORS .........................................................................65

X.    TAX CONSEQUENCES OF THE PLAN .........................................................66

A.    TAX CONSEQUENCES TO THE DEBTOR. ...............................................68

1.    Cancellation of Debt. ...............................................68

2.    Gain on Sales. .....................................................68

3.    Carryover Losses and Other Tax Attributes. .........................69

4.    Limitation on NOL Carry forwards. .................................69

5.    Alternative Minimum Tax. ..........................................69

XI.    EFFECT OF CONFIRMATION OF PLAN .........................................................69

A.    DISCHARGE .............................................................................69

B.    INJUNCTION ............................................................................70

C.    VESTING OF PROPERTY IN REORGANIZED DEBTOR ........................71

D.    MODIFICATION OF PLAN .......................................................71

E.    OTHER ASSURANCES ...........................................................71

F.    CONFIRMATION REQUEST .....................................................71

G.    FINAL DECREE .....................................................................71

XII.    OTHER PLAN PROVISIONS ........................................................72

A.    REVOCATION OF PLAN/NO ADMISSIONS. ...............................72

B.    HEADINGS. ...........................................................................72

C.    SEVERABILITY OF PLAN PROVISIONS. ...................................72

D.    GOVERNING LAW ................................................................72

E.    NO DISTRIBUTION WITH RESPECT TO DISPUTED CLAIMS ..........73

F.    SETOFF, RECOUPMENT AND OTHER RIGHTS. ..........................73

G.    POST-CONFIRMATION BUSINESS OPERATIONS AND UNITED STATES TRUSTEE FEES. ...................................................................73

H.    UNCLAIMED PROPERTY. .......................................................73

I.    ROUNDING ............................................................................74

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

iv

1    J.    PAYMENT DATE.................................................................................74

2  SCHEDULE I DEFINITIONS ........................................................................75

3  SCHEDULE II RULES OF CONSTRUCTION .............................................83

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

# I.

# **INTRODUCTION**

The Debtor is a real estate management company with its principal place of business in Irvine California. Among other things, the Debtor owns and operates the Story Building Property, which is a 13 story historical building located in Downtown, Los Angeles. The Story Building Property is primarily utilized as a jewelry plaza.

On the Petition Date, the Debtor commenced its bankruptcy case by filing in this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Bankruptcy Code allows a debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization in Chapter 11. The plan of reorganization may provide for a debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.

This document is the Plan proposed by the Debtor in this Case. Contained in the same envelope as this document is the Disclosure Statement, which has been approved by the Court, and which is provided to help you understand this Plan. All Creditors and equity security holders are encouraged to read thoroughly this Plan and the Disclosure Statement before voting to accept or reject this Plan. No solicitation materials, other than the Disclosure Statement and related materials being transmitted with this Plan have been authorized by the Court for use in soliciting acceptances or rejections of this Plan.

This is a reorganizing plan. In other words, the Proponent seeks to have the Debtor restructure and satisfy the Debtor's obligations to Creditors, and to continue its business on the terms set forth in this Plan.

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTION WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR INTEREST.**

# II.

# **DEFINITIONS AND RULES OF CONSTRUCTION**

The Definitions set forth in Schedule I and Rules of Construction set forth in Schedule II shall apply to the Plan and also to this Disclosure Statement.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

**A.    PURPOSE OF THIS DOCUMENT**

This document is the Disclosure Statement for the Debtor.  This Disclosure Statement describes the Plan filed by the Debtor.  This Disclosure Statement also tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.  The Plan sets forth the manner in which the Claims against and Interests in the Debtor will be treated following the Debtor's emergence from chapter 11.  This Disclosure Statement further describes certain aspects of the Plan, the Debtor's current and future operations, including, but not limited to, the proposed reorganization of the Debtor, and other related matters.

Chapter 11 allows a debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization.  The plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is proposing a plan of reorganization, rather than a liquidating Plan.

The Plan of the Debtor is sent to you in the same envelope as this document.  By and through the Plan, the Debtor will resolve all claims against the Estate.  Plan distributions shall be funded primarily from operations of the Story Building Property, and the New Value Contribution (discussed below).

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW AMONG OTHER THINGS:**

(1)    **WHO CAN VOTE OR OBJECT,**

(2)    **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan are confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

(3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4)    **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

(5) **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6) **WHETHER THE PLAN IS FEASIBLE.**

1  **FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THIS**

2  **DISCLOSURE STATEMENT, THE PLAN, AND THE EXHIBITS TO THESE DOCUMENTS**

3  **IN THEIR ENTIRELY.**

4  This Disclosure Statement cannot tell you everything about your rights.  You should consider

5  consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is

6  the best course of action for you.

7  Among other things, this Disclosure Statement sets forth the assumptions underlying the Plan,

8  describes the process that the Court will follow when determining whether to confirm the Plan, and

9  describes how the Plan will be implemented if it is confirmed by the Court.

10  Be sure to read the Plan as well as this Disclosure Statement.  If there are any inconsistencies

11  between the Plan and the Disclosure Statement, the provisions of the Plan will govern.  The Code

12  requires a Disclosure Statement to contain "adequate information" concerning the Plan.    The

13  Bankruptcy Court has approved this document as an adequate Disclosure Statement, containing

14  enough information to enable parties affected by the Plan to make an informed judgment about the

15  Plan. Any party can now solicit votes for or against the Plan.

16  THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

17  DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET

18  BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, AND

19  THE EFFECTIVE DATE OCCURS, THEN THE PLAN WILL BE BINDING ON THE DEBTOR

20  AND ON ALL CREDITORS AND OTHER PARTIES IN INTEREST IN THIS CASE.

21  **B.    DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING**

22  1.    Time and Place of the Confirmation Hearing

23  The hearing where the Bankruptcy Court will determine whether or not to confirm the

24  Plan filed by the Debtor will take place on the date set forth in the Order Approving this Disclosure

25  Statement, in **Courtroom "302"**, located at **411 West Fourth Street, Suite 2030, Santa Ana,**

26  **California 92701** before the **Honorable Erithe A. Smith**, United States Bankruptcy Judge.

27  / / /

28  / / /

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

2.    <u>Deadline for Voting For or Against the Plan</u>

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Kelli Nielsen, Creim Macias Koenig & Frey LLP; 633 W. Fifth Street, 51st Floor; Los Angeles, California 90071; Facsimile - (213)614-1961; Email address - knielsen@cmkllp.com.

**YOUR BALLOT MUST BE RECEIVED BY THE DATE AND TIME SET FORTH IN THE ORDER APPROVING THIS DISCLOSURE STATEMENT OR IT WILL NOT BE COUNTED.**

The following procedures will apply with respect to balloting and the tabulation of Ballots with respect to the Plan unless ordered by the Court otherwise prior to or at the hearing to approve this Disclosure Statement:

1.    The amount of a Claim or interest for purposes of Ballot tabulation will be:

   a.    For a Claim or interest identified in the Schedules as not contingent, not unliquidated, and not disputed, and that has not been disallowed, waived, or withdrawn by order of the Court, stipulation, or otherwise, prior to the Balloting Deadline (as defined in the Order approving this Disclosure Statement), and for which no proof of claim has been timely filed, the Claim or interest amount as identified in the Schedules (the "Scheduled Amount");

   b.    For a timely Proof of Claim or proof of interest that is filed in a specified liquidated amount and that is not the subject of an objection filed before the Balloting Deadline or that has not been disallowed, waived, or withdrawn by order of the Court, stipulation, or otherwise prior to the Balloting Deadline, the specified liquidated amount in such proof of claim or proof of interest ("POC Amount");

   c.    For a Claim or interest that is the subject of an objection in whole or in part before the Ballot Deadline, only the undisputed amount, if any, of such claim or interest, unless such claim or interest is temporarily Allowed under Bankruptcy Rule 3018(a) ("Disputed/Estimated Amount");

   d.    For a claim that is offered an option under the Plan to have its Claim Allowed for voting purposes upon the timely election of certain options, and which claimant is in compliance with the procedures set forth in the Plan for such election, the stipulated amount specified in the Plan ("Stipulated Amount");

2.    If an entity submits a Ballot for a claim or interest (i) for which there is no timely proof of Claim of claim or proof of interest filed and for which there is no corresponding Scheduled Amount, or (ii) which is the subject of an unresolved objection filed prior to the Confirmation Hearing, such ballot will not be counted unless ordered by the Court;

3.    Creditors that have Claims in more than one voting class under the Plan must submit a separate Ballot for voting their Claims in each such class; any creditor that requires additional copies of a Ballot may either photocopy the original Ballot or obtain an additional ballot pursuant to the instructions set forth in the Confirmation Hearing Notice and the proposed ballots.  **If a creditor uses one Ballot to vote Claims in more than one class, such combined Ballot will NOT be counted;**

4.    If an entity casts more than one eligible Ballot with respect to the same Claim or interest before the Balloting Deadline, the last Ballot received prior such deadline shall supersede any prior Ballot(s) by such entity with respect to such Claim or interest in the class in which the Ballot is submitted;

5.    Any Ballot that is incomplete or that is not received by the applicable deadline shall NOT be counted; provided, however, that any Ballot that is signed but that does not include an acceptance or rejection of the Plan shall be deemed to be a Ballot accepting the Plan

3.    <u>Deadline for Objecting to the Confirmation of the Plan</u>

Objections to the confirmation of the Plan must be filed with the Court and served upon Sandford L. Frey, Esq., Creim Macias Koenig & Frey LLP; 633 W. Fifth Street, 51st Floor; Los Angeles, California 90071; Facsimile - (213)614-1961; Email address - sfrey@cmkllp.com **by the date and time set forth in the Order approving this Disclosure Statement**.

Any objection must be in writing; specify the name and address of the party objecting; set forth the amount of the objecting party's Claims and any other grounds giving the objector standing to object; set forth grounds for the objection; and be accompanied by the objecting party's evidentiary support for its objection, including declarations made under penalty of perjury and other admissible documentary evidence.

4.    <u>Identity of Person to Contact for More Information Regarding the Plan</u>

Any interested party desiring further information about the Plan should contact Sandford L. Frey, Esq., Creim Macias Koenig & Frey LLP; 633 W. Fifth Street, 51st Floor, Los

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1 | Angeles, California 90071; Telephone - (213)614-1944; Facsimile - (213)614-1961; Email address -

2 | sfrey@cmkllp.com.

3 | **C.   DISCLAIMER**

4 |     The financial data relied upon in formulating the Plan is based on the information provided by

5 | the Debtor, the Debtor's books and the opinions of the Debtor.   The Debtor has represented that

6 | everything stated in the Disclosure Statement is true to the best of Debtor's knowledge.   The

7 | Bankruptcy Court has not yet determined whether the Plan is confirmable and makes no

8 | recommendation as to whether you should support or oppose the Plan.   The Debtor urges you to vote

9 | to accept the Plan.   The Debtor's professionals have prepared the Plan and Disclosure Statement at the

10 | direction of, and with the review, input, and assistance of, the Debtor's management.   The Debtor's

11 | professionals have not independently verified this information.

12 |     **Notwithstanding the foregoing, the statements and information contained in the Plan and**

13 | **Disclosure Statement, however, do not constitute financial or legal advice.   You should therefore**

14 | **consult your own advisors if you have questions about the impact of the Plan on your Claims or**

15 | **Interests.**

16 |     The statements and information that concern the Debtor that are set forth in this document

17 | constitute the only statements and information that the Court has approved for the purpose of soliciting

18 | votes to accept or reject the Plan.   Therefore, no statements or information that are inconsistent with

19 | anything contained in this Disclosure Statement are authorized unless otherwise ordered by the Court.

20 |     **You may not rely on the Plan and Disclosure Statement for any purpose other than to**

21 | **determine whether to vote to accept or reject the Plan.   Nothing contained in the Plan or**

22 | **Disclosure Statement constitutes an admission of any fact or liability by any party or may be**

23 | **deemed to constitute evidence of the tax or other legal effects that the reorganization set forth in**

24 | **the Plan may have on entities holding Claims or Interests.**

25 |     Unless another time is expressly specified in this Disclosure Statement, all statement contained

26 | in this document are made as of November 2010.   Under no circumstances will the delivery of this

27 | Disclosure Statement or the exchange of any rights made in connection with the Plan create an

28 | implication or representation that there has been no subsequent change in information included in this

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

document. The Debtor assumes no duty to update or supplement any of the information contained in this document and it presently does not intend to undertake any such update or supplement.

The Exhibits listed in the following table are intended to be a part of the Disclosure Statement. These Exhibits are incorporated into the Disclosure Statement and will be deemed to be included in the Disclosure Statement when they are filed.

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | Legal Description of Story Building Property |
| 2 | Settlement Statement |
| 3 | Status Conference Order – Docket No. 41 |
| 4 | Class 4 Claims |
| 5 | Liquidation Analysis |
| 6 | Monthly Operating Reports – Last 4 months |
| 7 | Rent Rolls |
| 8 | Projected Income and Expense Statement |

## III.

## BACKGROUND

**A.    DESCRIPTION OF THE DEBTOR**

The Debtor is a Delaware limited liability company, with its principal place of business in Irvine, California. The Debtor's principal office is located at 1 Charlotte, Irvine, CA 92603.

Among other things, the Debtor owns and operates the Story Building Property, which is a 13 story historical building located in Downtown, Los Angeles, known as the Walter P. Story Building, located at 610 S. Broadway. The Story Building Property is primarily utilized as a jewelry plaza.

The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of creditor holding unsecured claims was not been formed in this Case.

///

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

Although the Debtor is a management company, it primarily manages the Story Building Property at the current time. Inasmuch as the Debtor primary source of income at the current time is derived from the operation and management of the Story Building Property (although the Debtor is exploring other opportunities as part of its exit strategy), the Debtor agreed with its primary secured lender, Wells, to treat this case as a "single asset real estate" case within the meaning of Bankruptcy Code §101(51B), so as to, among other reasons, avoid the expense of litigation over collateral issues. Accordingly, the Debtor commenced making payments to Wells at the non-default contract rate from the inception of the case (see discussion below).

The Debtor has 7 full time employees (excluding Abraham Mosaddegh), who are Anahid Avagimian; Adan Bonilla; Antonio Cesante; Mario Delgadillo; Santiago Rodriquez; Pierre Toulkany; and, Andye Zamani. Brief job descriptions are set forth below.

Anahid Avagimian runs the building office, answers phones, books service appointments, assists management in maintenance of the books and records, and answers tenant issues and generally takes care of the tenants on a daily basis.

Adan Bonilla is the building engineer.

Antonio Cesante, Mario Delgadillo and Santiago Rodriquez work in the treatment room necessary for environmental safety for the F1 qualified building (see discussion below).

Pierre Toulkany has been employed as a consultant with the building for 25 years. He handles tenant issue on a daily basis and is familiar with the tenants due to his long standing relations with many of them. He is at the building on a full time basis.

Ardalan Zamani is in charge of the financial operations, such as banking, projections, accounts payable and budgeting, as well as Debtor in Possession reporting.

        1.      Debtor's Principal

        a.      Principal

             The Debtor's interest holder is Mehrdad Safari.

        b.      Management of the Debtor Before and After the Bankruptcy

             i.      Management

The Debtor's day to day operations are currently run by Abraham Mosaddegh. As the Debtor's Manager, Mr. Mosaddegh oversees the company's accounting and bookkeeping and all administrative functions, including payroll. Since the Petition Date, Mr. Mosaddegh receives no compensation from the Debtor for his services.

ii.    Management Compensation

With respect to the Debtor, the following compensation was being paid by the Debtor:

| NAME | TITLE | MONTHLY COMPENSATION |
|------|-------|----------------------|
| Mehrdad Safari | Interest Holder | $0.00 |
| Abraham Mosaddegh | Manager | $0.00 |
| Ardalan Zamani | Employee | $5,000.00 |

Ardalan Zamani is the son-in-law of the Manager Abraham Mosaddegh. Since the Petition Date, Ardalan Zamani received the compensation reflected above from the Debtor for his services to the Debtor.

**B.    HISTORY OF THE DEBTOR**

The Debtor was formed on or about May 19, 2006, and remains an active Delaware limited liability company. The Debtor acquired the Story Building Property in or around January 23, 2007. The original purchase price for the Story Building Property was approximately $27,700,000. The Story Building Property was valued at over $30,000,000 in 2008.

Of the original $27,700,000 purchase price, the Debtor paid $17,699,894.50 in cash and also assumed an existing loan which had a balance at closing of $12,369,823.36. With added costs at the time of closing, the total consideration at closing came to $30,069,717.86. The Debtor's Settlement Statement is attached as ***Exhibit "2"***. In addition, the Debtor has spent approximately $4,500,000 improving the Story Building Property subsequent to closing.

**C.    EVENTS LEADING TO CHAPTER 11 FILING**

A brief summary of the circumstances that led to the filing of the Debtor's Chapter 11 case is set forth below. The Debtor commenced this Case by filing a voluntary petition under Chapter 11 of

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1    the Bankruptcy Code in the Bankruptcy Court for the Central District of California, Santa Anna

2    Division on the Petition Date - May 17, 2010.

3        As stated, the Story Building Property was purchased by the Debtor in 2007 for $27,700,000.

4    As with many businesses in our current economic climate, the Story Building Property has

5    experienced a sudden decrease in occupancy rates over the year prior to the Petition Date.  This

6    resulted in a temporary reduction in its overall operating income, which directly affected payment of

7    its debts.

8        The first floor plaza of the Story Building Property is dedicated to retail and the 2nd through

9    11th floor dedicated to jewelry manufacturing and repair.  The Story Building Property's historical

10   occupancy rate is 90% or better.  Due to the poor economy for the jewelry industry, prior to the

11   Petition Date, the current occupancy rate of the Story Building Property temporarily dipped to

12   approximately 60%.  Currently, there are 118 tenants.  The Plaza has 48 booths occupied and 14

13   vacancies.  The remainder of the Story Building Property has 68 manufacturing and repair tenants, 1

14   office and 1 parking lot tenant.

15       In addition to the temporary dip in occupancy rates, the Debtor has recently been forced to

16   accommodate tenant cash flow respecting the collection of rent due to the poor economy.  As a result,

17   the monthly cash flow had dipped to an average of $150,000 per month.

18       Due to the inability to negotiate acceptable accommodations with its lender and certain

19   vendors, the Debtor was forced to file for bankruptcy protection.  The filing was done in an effort to

20   restructure its liabilities and get additional time to stabilize its leasing situation, so as to once again

21   achieve a reliable and steady income stream with which to service the remaining debt.  This is one of

22   the purposes of the Debtor's Plan.

23   **D.    SIGNIFICANT EVENTS DURING THE BANKRUPTCY**

24       During the chapter 11, the Debtor attempted to restore its operations to profitability by, among

25   other things, working with its tenants.

26       The Debtor requested one extension of time to file its Schedules of Assets and Liabilities

27   ("Schedules") and Statement of Financial Affairs ("SOFA") by Motion filed June 4, 2010 [Docket No.

28   21].  The Schedules and SOFA were filed on June 16, 2010 [Docket No. 27].

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1.    Employment of Professionals

The Debtor employed Creim Macias Koenig & Frey LLP, as general reorganization counsel for the Debtor, pursuant to application filed June 16, 2010 [Docket No. 28]. The employment of Debtor's Counsel was approved by order entered on July 27, 2010 [Docket No. 38].

The Debtor may employ Biggs & Company. The Debtor has requested the employment of Biggs & Co. as its proposed accountants and financial advisors, although the application has not yet been filed.

The Debtor may, but has not yet retained, an appraiser to conduct a valuation if it becomes necessary in connection with Confirmation.

The Debtor may also retain Special Litigation counsel to handle certain claims disputes, such as concerning Liftech.

2.    341(a) Hearing

The Debtor appeared at its Initial Debtor Interview ("IDI") which was scheduled by the U.S. Trustee contemporaneously with the statutory meeting of creditors held pursuant to Bankruptcy Code § 341(a) ("341(a) Hearing"). The Debtor appeared and was examined at the 341(a) hearing on June 23, 2010.

3.    Cash Collateral Motions

On May 20, 2010, the Debtor filed and served its *"Debtor's Emergency Motion For Interim And Final Orders Under 11 U.S.C. 105(a), 361 And 363; FRBP 4001 And 9014; And LBR 4001-2 Authorizing Debtor To: (1) Use Of Interim Cash Collateral; And (2) Setting Final Hearing On Cash Collateral Motion"* [Docket No. 4] ("Cash Collateral Motion").

On May 25, 2010, the Court held an interim hearing on the Motion. The Court granted interim use of cash collateral based upon the *"Stipulation by Story Building LLC and Wells Fargo Bank, N.A., a Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-C1 Interim Stipulation Providing for: (1) Limited Use of Cash Collateral; (2) Adequate Protection; and, (3) Setting Final Hearing"* [Docket

No. 15] ("Interim Stipulation"), which Interim Stipulation was approved by order entered on June 7, 2010 [Docket No. 23].

In addition to the First Interim Hearing, the Court held continued hearings on interim use of cash collateral pursuant to the Cash Collateral Motion on June 21, July 22, August 31, 2010, September 30 and November 4 (collectively the "Interim Hearings"). By agreement of Wells and the Debtor, authorization to use cash collateral was continued through the Interim Hearings pursuant to the Interim Stipulation and the agreed upon revised Budget.

On November 5, 2010, the Debtor and Wells *Continued Interim Stipulation Providing for: (1) Use of Cash Collateral; (2) Adequate Protection; and, (3) Setting Final Hearing"* [Docket No. 52] ("Continued Interim Stipulation"). Pursuant to the Continued Interim Stipulation, among other things, the Debtor is authorized to use and continue to use Cash Collateral during the Interim Period and through the date of the continued Final Hearing on December 4, 2010 for the Debtor's ordinary and necessary operating expenses, including salaries, pursuant to the categories set forth in the Budget attached to the Continued Interim Stipulation; provided, however, that the Debtor may exceed on a monthly basis the amount set forth in each category of disbursements set forth in the Budget by ten percent (10%); and may also exceed on a monthly the aggregate amount of disbursements set forth in the Budget by ten percent (10%). Additionally, the Budget may be supplemented or extended, provided that such supplementation or extension has been approved by Wells or by this Court after notice to Wells and a hearing. As of the date of this Disclosure Statement, the Court has not yet entered the order approving the Continued Interim Stipulation. The final hearing on cash collateral is set for December 2, 2010.

4.      Adequate Protection Payments

On June 11, 2010, the Debtor commenced making interest payments to Wells at the non-default interest rate specified in the Well's pre-petition Loan Documents (as defined in the Description of the Debtor's Assets section below) at a per diem rate of $1,798.44 ("Adequate Protection Payments"). The first Adequate Protection payment covered interest from the Petition Date through June 11, 2010 and was paid on or about June 11, 2010. The Debtor has paid subsequent Adequate Protection Payments monthly on or about the 11th day of each month through October 2010.

1   The Debtor has made a total of 5 payments to Wells since the Petition Date through October 2010,

2   aggregating over $250,000.

3       5.      Plan Deadline/Exclusivity

4           During the course of the Debtor's case, the Court has issued an Order in this Case

5   requiring the Debtor to file its Plan of Reorganization and Disclosure Statement on or before October

6   29, 2010, which was the date initially suggested by the Debtor.  The Debtor has requested and been

7   granted one extensions of exclusivity.  Pursuant to order entered October 8, 2010 [Docket No. 47], the

8   time within which the Debtor must file its Plan of Reorganization ("Plan Exclusivity Period") was

9   extended through and including October 29, 2010.  For purposes of maintaining the Debtor's exclusive

10  right to file a plan, the time within which the Debtor has to solicit acceptance of its Plan of

11  Reorganization ("Solicitation Exclusivity Period") is extended through and including December 31,

12  2010 pursuant to order of the Court.  On October 27, 2010, the Debtor filed a *"Stipulation to Extend*

13  *the Date by which Debtor is Required to File a Plan of Reorganization and to Extend the Debtor's*

14  *Exclusive Period to File a Plan Of Reorganization and to Obtain Acceptances of its Plan"* [Docket

15  No. 49].  Pursuant to order entered November 3, 2010, the Debtor's deadline to file its Plan was

16  extended to November 12, 2010.

17      6.      Bar Dates

18          A Bar Date for filing Proofs of Claim in this case was set for **October 15, 2010**.

19  Pursuant to the *"Chapter 11 Status Conference Order"* entered August 16, 2010 [Docket No. 41], a

20  copy of which is attached as ***Exhibit "3"***.  Notice of the Bar Date was sent on August 13, 2010 as

21  required by the Court's order. [Docket No. 40].

22          **THE BAR DATE IN THIS CASE WAS OCTOBER 15, 2010**

23      7.      Legal Proceedings

24          The Reorganized Debtor shall pursue Rights of Action, any and all preference actions,

25  fraudulent transfer actions and/or other avoidance actions that may exist, claims litigation and

26  estimation for the benefit of the Debtor's Estate.  The Reorganized Debtor reserves the right to pursue

27  all claims and causes of action against Liftech, USV and/or Blackhawk.  The Debtor anticipates filing

28  claims against Blackhawk, Liftech and USV.  USV filed a mechanics lien, but it failed perfect it by

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

filing a timely lawsuit.  The Debtor has claim under Bankruptcy Code §§ 544, 547 and 550 against USV.  The Debtor has claims against Liftech respecting its elevator service contract, for which it may need to retain special counsel to handle.  The Debtor would assert a claim for, among other claims, breach of contract.

The Debtor is hopeful that a consensual resolution can be reached with such creditors. The Reorganized Debtor, in its absolute and sole discretion, may settle such actions following the Effective Date without further notice or hearing, except as otherwise provided in the Plan.

Before and after the Effective Date, the Reorganized Debtor retains the right to seek a surcharge any holder of a Secured Claim pursuant to Bankruptcy Code §506(c).

In addition, certain Claims may be subject to rights of offset, recoupment or counterclaims of the Debtor and/or Reorganized Debtor, and those rights are reserved by the Reorganized Debtor.  Notwithstanding anything to the contrary contained in the Disclosure Statement or Plan, the Reorganized Debtor may, but shall not be required to, setoff, recoup, assert counterclaims or withhold against the distributions to be made pursuant to this Plan on account of any claims that the Debtor, the Estate, or the Reorganized Debtor may have against the entity holding an Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment, nor the allowance of any Claim against the Debtor or the Reorganized Debtor, nor any partial or full payment during the Cases or after the Effective Date in respect of any Allowed Claim, shall constitute a waiver or release by Debtor, the Estate or the Reorganized Debtor of any claim that they may possess against such holder.

The Reorganized Debtor reserve the right to pursue claims against lessees, for, among other things, breach of the lease, past and future rent and damages.

a.    Claims Estimation

Under the Plan, the Debtor has the right to file motions seeking to estimate Claims, including, without limitation, Secured Claims in accordance with 11 U.S.C. § 502(c)(1). Through such motions, the Debtor can seek a ruling from the Court estimating any claim a fixed amount for the purpose of voting, allowance and distributions under the Debtor's Plan.  The Debtor does not intend currently intend to seek estimation of any Claim prior to the hearing on Confirmation.

1    Once claims have been estimated and allowed for purposes of distribution at a fixed amount, claims

2    will be treated and distribution reserved based on such fixed amount, subject to any further order upon

3    motion under Bankruptcy Code §502(j) to reconsider the fixed amount allowed.    Until Claims are

4    finally Allowed: (a) such Claims shall not receive any distribution; and (b) such Claims shall be

5    reserved in the amount estimated.

6            b.        Actual and Projected Recovery of Preferential or Fraudulent Transfers

7            No preference or fraudulent conveyance actions exist and none are expected to be filed at this

8    time, although the Debtor has not yet completed its analysis of avoidance actions and the Plan reserves

9    the right to commence such actions.    The Debtor has not yet completed its review and analysis of

10   avoidance actions.    At the current time, the Debtor is not aware of any significant avoidance actions.

11   Moreover, the cost of pursuing such actions may not be justified as at the present time it appears likely

12   that this case may result in full payment of unsecured claims.

13   **E.      DESCRIPTION OF THE DEBTOR'S ASSET**

14           1.        Real Estate.

15           The Debtor's primary asset is the Story Building Property, which is a 13 story historical

16   building located in Downtown, Los Angeles, known as the Walter P. Story Building, located at 610 S.

17   Broadway.    The Story Building Property is primarily utilized as a jewelry plaza.

18           This is a unique Chapter 11 case in the present economy because it is undisputed that the Story

19   Building Property has substantial equity even in today's market.    The original purchase price for the

20   Story Building Property was approximately $27,700,000.    The Story Building Property was valued at

21   over $30,000,000 in 2008.

22           While the real estate market may have experienced a general decline since 2007, the Debtor

23   believes that values appear to have stabilized recently.    Moreover, a meritorious argument exists that

24   the Story Building Property has not declined commensurate with general market conditions due to the

25   uniqueness of the building, its historical significance, and its unique use, among other reasons.

26           The Story Building Property is an *historic* landmark building that was built over 100 years ago.

27   The Story Building Property is one of the very few buildings on Broadway with its own parking

28   structure.    The Story Building Property is also one of the few buildings in Los Angeles that is qualified

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1    for F1, which permits manufacturing.  The Story Building Property contains a treatment room and

2    filtration which is necessary for jewelry manufacturing and environmental protection.  The cost to

3    qualify the building is well over $3 million.  In addition, there is also a widely publicized multi-billion

4    city and redevelopment commitment to the City's "Bring Broadway Back to Life" campaign.  The

5    Story Building Property is located in the heart of the planned redevelopment and is a planned stop for

6    the proposed cable-car project.

7            Assuming arguendo a decline consistent with the market, the Debtor nevertheless believes that

8    the current fair market value of the Story Building Property based on the current occupancy is

9    $17,000,000 to $20,000,000.  That the Story Building Property maintains significant equity cushion in

10   excess of the liens is attributable to, among other things, the sizable amount of cash paid by the Debtor

11   at the time of purchase as well as invested subsequent to closing.  Of the original $27,700,000

12   purchase price, the Debtor paid $17,699,894.50 in cash and also assumed an existing loan which had a

13   balance at closing of $12,369,823.36.  With added costs at the time of closing, the total consideration

14   at closing came to $30,069,717.86.  In addition, the Debtor has spent approximately $4,500,000

15   improving the Story Building Property subsequent to closing.

16          The Story Building Property has lease space for approximately 200 tenants (excluding the

17   penthouse which occupies the 12th and 13th floor as renovations of the penthouse are not yet complete).

18   The first floor plaza is dedicated to retail and the 2nd through 11th floor dedicated to jewelry

19   manufacturing and repair.  The Story Building Property's historical occupancy rate is 90% or better.

20   Due to the poor economy for the jewelry industry, the current occupancy rate has temporarily dipped

21   to approximately 60%.

22          Currently, there are 118 tenants.  The Plaza has 48 booths occupied and 14 vacancies.  The

23   remainder of the Story Building Property has 68 manufacturing and repair tenants, 1 office and 1

24   parking lot tenant.  In addition to the temporary dip in occupancy rates, the Debtor has recently been

25   forced to accommodate tenant cash flow respecting the collection of rent due to the poor economy.

26   / / /

27   / / /

28   / / /

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

| INCOME | |
|---|---|
| *Rental* | *$161,000* |
| *Misc* | *$0* |
| **Total Average Monthly Income** | **$161,000** |
| **Annualized Income** | **$1,932,000** |

| ESTIMATED MONTHLY EXPENSES | |
|---|---|
| *Building maintenance and repair* | *$1,000* |
| *Staff payroll* | *$11,245* |
| *Janitorial service fees and supplies* | *$4,000* |
| *Electronic maintenance consult fee* | *$5,000* |
| *Treatment room maintenance* | *$1,000* |
| *Fire inspection consult fee* | *$100* |
| *Security service* | *$21,290* |
| *Office security service fee* | *300* |
| *IVAC expenses* | *$250* |
| *Tax reduction consultant fee* | *$5,000* |
| *Property management consult fee* | *$6,000* |
| *Babylon Group, tenancy fee* | *$5,000* |
| *Office supplies* | *$500* |
| *Waste water disposal service fee* | *$800* |
| *Waste water chemical material* | *$800* |
| *Property utilities* | *$40,000* |
| *Treatment room testing* | *$150* |
| *Automobile/travel expense* | *$500* |
| *Elevator services and repairs* | *$1,200* |
| *Misc* | *$1,000* |

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 41ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

| ESTIMATED MONTHLY EXPENSES | |
|---|---|
| **Total Average Monthly Expenses** | **$104,635** |
| **Annualized Expenses** | $1,255,620 |

It should be noted, the foregoing is a projection of average expenses for the Story Building Property. Actual expenses in some categories vary from month to month, and such variation could be material, such as in the categories of maintenance and repair, elevator repair and utilities. However, the Debtor has made efforts to project these expenses as accurately as reasonable possible. The forgoing expense projections do not include payments to Wells and property tax (addressed separately below and in the financial projections).

DEBT SERVICE

| Mortgage Lender | Loan Balance | Interest Rate | Monthly Payments* | Maturity Date |
|---|---|---|---|---|
| Wells | 11,561,397 | 5.6% | $53,954 (interest only) | February 11, 2014 |

Wells asserts a secured claim against the Story Building Property pursuant to a Promissory Note ("Note") and that certain Deed of Trust, Security Agreement and Assignment of Leases and Rents dated as of January 26, 2004 (the "Wells Deed of Trust"), and recorded in the Official Records, County of Los Angeles, on January 28, 2004 as Instrument 04-193602, and that certain Assignment of Leases and Rents dated as of January 26, 2004 (the "Assignment of Leases and Rents"), and recorded in the Official Records, County of Los Angeles, on January 28, 2004 as Instrument 04-193603. The Note, Deed of Trust, Assignment of Leases and Documents and other related documents are sometimes referred to in the Disclosure Statement and Plan as the "Wells Loan Documents".

The principal balance of the Note is $11,561,397 as of April 8, 2010. The non-default interest rate under the Note is 5.6%. The Note calls for payments of principal and interest at the rate of $81,229.66.

Pursuant to the Interim Stipulation and the Continued Interim Stipulation, the Debtor is making the Adequate Protection Payments to Wells at the non-default interest rate specified in the Loan Documents at a per diem rate of $1,798.44. The first Adequate Protection Payment covered interest from the Petition Date through June 11, 2010 and was paid on or about June 11, 2010. The Debtor has

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

paid subsequent Adequate Protection Payments monthly on or about the 11th day of each month through November 2010. The amount of each monthly Adequate Protection Payment varies depending upon the actual number of days in each month, although the approximate amount of the monthly payment has averaged approximately $53,000 over the past 5 months. The Debtor has made a total of 5 payments to Wells since the Petition Date through the date of this Disclosure Statement as follows:

| Payment Amount | Date |
|---|---|
| $46,759.44 | June 2010 |
| $52,154.76 | July 2010 |
| $53,940.00 | August 2010 |
| $55,751.00 | September 2010 |
| $55,751.64 | October 2010 |
| Total as of October 2010 - | $264,356.84 |

The Debtor believes that property taxes are current. No other voluntary liens are asserted against the Story Building Property. The following Creditors assert involuntary liens, which are disputed, although treated in separate subclasses under Class 1.

Blackhawk asserts a Secured Claim in the approximate amount of $100,000;

Liftech asserts a Secured Claim in the amount of $246,708; and

USV asserts a Secured Claim in the approximate amount of $50,000.

Although USV filed a mechanics lien, it failed perfect by filing a timely lawsuit.

2.    Personal Property.

In addition to the Story Building Property, the Debtor's non-real estate assets include the following:

Cash of $109,866 as of October 1, 2010.

A Reserve Account in the approximate amount of $290,000, which Wells is also holding as security in connection with the Story Building Property.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

The Debtor's assets include equipment, cabinetry, shelving, showcases and accessories, which in the Debtor's opinion have a value in excess of $2 million, exclusive of the fixtures and improvements to the Story Building Property. In addition, Wells also asserts a lien against personal property pursuant to a Financing Statement, which personal property includes improvements, equipment, easements, furniture, fixtures, goods, inventory, appurtenances, materials, water rights, utilities, minerals, cash funds, deposit accounts, Reserves, Rents, Security Deposits, General Intangibles (as defined in the Deed of Trust), accounts, awards, and other items and personal property derived therefrom or used in connection therewith, as defined and as more particularly set forth in the Deed of Trust (together with the Land and the Improvements).

The Debtor also has an interest in Rights of Action. However, the Debtor does not believe that these have significant value, other than possibly the action against Liftech.

## IV.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    GENERAL OVERVIEW

As required by the Bankruptcy Code, this Plan classifies Claims and Interests into various Classes according to their right to priority. This Plan states whether each Class of Claims or Interests is impaired or unimpaired. This Plan provides the treatment each Class will receive.

### B.    UNCLASSIFIED CLAIMS

Certain types of Claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on this Plan because they are automatically entitled to specific treatment as provided for them in the Bankruptcy Code. As such, the Plan Proponents have not placed the following Claims in a Class.

1.    Administrative Expenses

Administrative expenses are Claims for costs or expenses of administering Debtor's Chapter 11 Case which are allowed under Code Sections 503(b) and 507(a)(1), including, without limitation, (i) the actual, necessary costs and expenses incurred after the commencement of Debtor's Chapter 11 Case, including unpaid property tax and other tax Claims, and (ii) compensation for legal and other services and reimbursement of expenses awarded pursuant to Sections 330(a), 331 or 1103

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1  of the Bankruptcy Code.  The Bankruptcy Code requires that all Administrative Claims be paid on the

2  Effective Date of this Plan, unless a particular claimant agrees to a different treatment.

3        The extent and amount of Administrative Claims listed below are a projection of

4  amounts reasonably expected to be unpaid as of the Effective Date, and will be supplemented based

5  upon fee applications filed by the professionals, and actual claims of the county tax collector, if any.

6        The following chart lists all of Debtor's Section 503(b) and Section 507(a)(1)

7  Administrative Claims and their treatment under this Plan:

| Name | Balance Owed As Allowed On An Interim Basis In Prior Fee Applications | Additional Estimated Accruals by Effective Date | Treatment |
|---|---|---|---|
| Creim Macias Koenig & Frey LLP | $45,000 | $25,000 | Unless otherwise agreed by the administrative claimant, payment in full of Allowed Claim, in Cash, on the later of the Effective Date or the date allowed by the Court. |
| Accountants. | $0 | $15,000 | Unless otherwise agreed by the administrative claimant, payment in full of Allowed Claim, in Cash, on the later of the Effective Date or the date allowed by the Court |
| Appraiser[1]/Experts | $0 | $25,000 | Unless otherwise agreed by the administrative claimant, payment in full of Allowed Claim, in Cash, on the later of the Effective Date or the date allowed by the Court. |
| Clerk's Office Fees | $2,500 | | Unless otherwise agreed by the administrative claimant, payment in full of Allowed Claim, in Cash, on the later of the Effective Date or the date allowed by the Court. |
| Office of the U.S. Trustee Fees | $5,000 | | Unless otherwise agreed by the administrative claimant, payment in full of Allowed Claim, in Cash, on the later of the Effective Date or the date allowed by the Court. |

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

| Name | Balance Owed As Allowed On An Interim Basis In Prior Fee Applications | Additional Estimated Accruals by Effective Date | Treatment |
|---|---|---|---|
| | Actual | Projected | Total |
| **TOTAL ADMINISTRATIVE EXPENSES** | $45,000 | $72,500 | $117,500 |

The aggregate amount of Cash required to pay in full all of the foregoing Administrative Claims as well as the amount necessary to pay the Allowed Administrative Real Estate Tax Claims for the Story Building Property (set forth below) is referred to hereinafter collectively as the "Administrative Claims Funding Amount".

The following chart lists all of Debtor's unpaid post-petition property tax and other tax Claims and their treatment under this Plan:

| Name | Amount Owed (Estimated) | Treatment |
|---|---|---|
| Unpaid Balance of Post-Petition Real Property Taxes and Penalties Accrued Thereon | $0 | Unless otherwise agreed by the administrative claimant, payment in full of Allowed Claim, in Cash, on the later of the Effective Date or the date allowed by the Court. |
| **TOTAL OTHER ADMINISTRATIVE EXPENSES** | $0 | |

The aggregate amount of Cash required to pay in full Administrative Claims Funding Amount is approximately $117,500, which will be paid first from Cash on hand and the New Value Contribution. The amount of Cash on hand as of October 1, 2010 is $109,866. By way of example, the amount of the Effective Date Contribution would be $17,500. However, the Debtor anticipates leaving a reserve of cash on hand. Therefore, it is anticipated that the New Value Contribution will be a minimum of approximately $50,000.

/ / /

/ / /

a.    Court Approval of Fees Required

The Court must rule on all fees listed in the above chart before the fees will be Allowed.  For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application for all such fees and costs incurred prior to the Effective Date.  Only the amount of fees allowed by the Court will be Allowed and required to be paid under this Plan.

Notwithstanding the foregoing or any provision to the Plan or Disclosure Statement to the contrary, professional fees incurred after the Effective Date may be billed and paid by the Reorganized Debtor in the ordinary course of business without prior Court authorization.

b.    Allowance Of Other Administrative Claims

Pursuant to this Plan the Bar Date for Asserting Administrative Claims and Requiring Proofs of Claim for Post-Petition, Administrative Claims (the "Administrative Bar Date"), shall be fixed as a date set forth in the Confirmation Order which is a date which is at least sixty (60) days following the Effective Date, and shall be the deadline date by which all claims allowable pursuant to 11 U.S.C. § 503(b), must have been asserted in this case or are forever barred.  All such claims must have been asserted by the filing of a proof of claim (i) designated as a request for payment of Administrative Expenses, (ii) asserting that such Claim is allowable pursuant to 11 U.S.C. § 503(b), (iii) stating the amount of the Claim, (iv) stating the basis of the Claim, and (v) attaching documentation in support of the Claim.

All such requests for payment of Administrative Claims and applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Court.  HOLDERS OF ADMINISTRATIVE CLAIMS (INCLUDING, WITHOUT LIMITATION, PROFESSIONALS) REQUESTING COMPENSATION OR REIMBURSEMENT OF EXPENSES THAT DO NOT FILE SUCH REQUESTS BY THE APPLICABLE BAR DATE SHALL BE FOREVER BARRED FROM ASSERTING SUCH CLAIMS AGAINST DEBTOR, DEBTOR'S ESTATE, REORGANIZED DEBTOR OR THE PROPERTY OF REORGANIZED DEBTOR.  Any objection to Administrative Claims of professionals shall be filed on or before the date specified in the application for final compensation and reimbursement of

expenses.  Any objection to any other Administrative Claim must be filed within 120 days from the date such Administrative Claim is filed.

     2.    Priority Tax Claims

     Priority Tax Claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8).  The Bankruptcy Code requires that each Holder of such a Section 507(a)(8) Priority Tax Claim receive the present value of such Claim in deferred Cash payments, over a period not exceeding six years from the date of the assessment of such tax.  Although the class exists primarily for Claim for real property taxes, the Debtor believes that there are no Section 507(a)(8) Priority Tax Claims which exists.

     The Internal Revenue Service has filed a claim (Claim 1) for $995.45 in priority taxes and $600 in unsecured tax claims.  Claim 1 appears to be a precautionary claim for "unassessed liability", and the Debtor does not believe any amounts are owed to the Internal Revenue Service.  Nevertheless, such claim is provided for below in the event that the Debtor cannot resolve such Claim.

     The following chart lists all of Debtor's Section 507(a)(8) Priority Tax Claims and their treatment under this Plan.

| Description | Amount Owed | Treatment |
|---|---|---|
| County Assessor of Los Angeles Pre-petition property taxes | $0 | Unless otherwise agreed by Reorganized Debtor and claimant, the holder of the Allowed Claim in this class shall receive in Cash, the full amount of the Allowed Claim plus interest at the rate of 4% accruing as of the Effective Date, in ten (10) biannual installments on Sept 30 and April 30 (or the first Business Day thereafter) commencing on the first such date which is at least 90 days following the Effective Date and continuing on each such date thereafter.  Notwithstanding the foregoing, the final payment of the Allowed Claim shall be made on a date which is not more than 5 years after the Petition Date.  In the sole and absolute discretion of the Debtor or Reorganized Debtor, the Allowed Claim in this Class may be paid in full at any time on or after the Effective Date. |

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

| Description | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service | $995.45 | Unless otherwise agreed by the administrative claimant, payment in full of Allowed Claim, in Cash, on the later of the Effective Date or the date allowed by the Court. |

The Debtor believes that property taxes are current and that no Priority Tax Claims exit. Nevertheless, this class is provided for in the Plan should the Debtor ascertain that any such Claim is asserted that would qualify under Section 507(a)(8) as a Priority Tax Claim.

**C.    CLASSIFIED CLAIMS AND INTERESTS**

1.    Classes Of Secured Claims

Secured Claims are Claims secured by liens on property of the Estate. The following chart lists all Classes containing Debtor's secured pre-petition Claims and their treatment under this Plan:

| CLASS NO. | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1A | WELLS<br><br> Collateral description = Security interest in the Wells Collateral<br><br>Schedule A Collateral value = $19,290,000<br><br>Scheduled D Claim amount = $11,561,304.78 | No. | Class 1 is impaired. | On the Effective Date, the Story Building Property shall be vested in the Reorganized Debtor, subject to the lien securing the Allowed Claim of Class 1A, to the extent that the value of the claimholder's interest in the collateral as determined under Bankruptcy Code §506(a).<br><br>On the Effective Date or as soon thereafter as practicable, the holder of the Allowed Class 1A Claim shall receive on account of such Allowed Claim:<br><br>(1) the lien to which the holder of such Allowed Class 1A Claim is entitled shall remain in place; and,<br><br>(2) deferred cash payments totaling the Allowed Class 1A Claim, of a value, as of the Effective Date equal to Well's interest in the Wells Collateral, paid as follows: |

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

Case 8:10-bk-16614-ES    Doc 56    Filed 11/12/10    Entered 11/12/10 19:02:50    Desc
Main Document    Page 32 of 34

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944


| CLASS NO. | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | | | | (A) Thirty-Six (36) *Class 1A Interest Payments*, commencing on a date which is the first Business Day after the eleventh (11th) day of the first full month after the Effective Date, and continuing on the eleventh (11th) day of each consecutive month thereafter (or the first Business day thereafter if the 11th day falls on a weekend or holiday); |
| | | | | (B) Thirty-Six (36) *Class 1A Amortization Payments*, commencing on a date which is the first Business Day after the eleventh (11th) day of the thirty-seventh month after the Effective Date, and continuing on the eleventh (11th) day of each consecutive month thereafter (or the first Business day thereafter if the 11th day falls on a weekend or holiday); and, |
| | | | | (C) One (1) final payment for the balance of the Allowed Claim in full on or before February 11, 2017. |
| | | | | The Court shall determine the appropriate interest rate to be applied to the future payment stream to be made after the Effective Date. |
| | | | | On the Effective Date, (i) any and all non-monetary defaults shall be deemed cured and waived as of the Effective Date; (ii) the Allowed Claim of Class 1A may be paid any time after the Effective Date and before maturity; (iii) notwithstanding any provision of the Loan Documents (including, without limitation, the Note and Deed of Trust), the holder of the Class 1A Claim shall not be entitled to receive a fees, charge, penalty or other payment as a consequence of early payment of the Note prior to the maturity date or upon sale of the Story Building Property or any other Wells Collateral, including, |

27

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

| CLASS NO. | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|-----------|-------------|----------------|----------------|-----------|
| | | | | without limitation a payment of unmatured interest, prepayment penalty, liquidated damages or any other similar penalty, fee or other charge; (iv) any monetary defaults shall be added to the principal balance of the Allowed Claim/Note; (v) the treatment hereunder with respect to such holder's Allowed Class 1A Claim, shall be without recognition of any default rate of interest, or similar penalty or charge, and upon the Effective Date, no default shall exist; and, (vi) the reinstatement of the maturity of such Allowed Class 1A Claim as the maturity existed before any default, without recognition of any default rate of interest or similar penalty or charge.<br><br>After the Effective Date, if, and only if, the Reorganized Debtor has failed to deliver to the holder of the Class 1A Allowed Claim an aggregate of two (2) *Class 1A Interest Payments* or two (2) *Class 1A Amortization Payments*, as applicable, which are due after the Effective Date, the holder of the Class 1A Allowed Claim shall have the right to declare a default under the Plan and institute foreclose proceedings by recording a Notice of Default and thereafter proceed with non-judicial foreclosure of the Story Building Property in accordance with, and pursuant to, the applicable provision of its deed of trust and California law, and after delivery to the Reorganized Debtor and Debtor's Counsel fifteen (15) days written notice of such default and intent to foreclosure ("Class 1A Notice of Intent to Foreclose").<br><br>The Debtor may cure the post-petition default and reinstate Class 1A Plan treatment at any time prior to the actual foreclosure sale by delivering such number of *Class 1A Interest Payments* or *Class 1A Amortization Payments*, as applicable, so that the number of such unpaid payments is less than two.<br><br>After the Effective Date, in the event the Reorganized Debtor elects to sell all or a part of the Story Building Property, |

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

| CLASS NO. | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | | | | such Story Building Property shall be sold free and clear of any and all claims, liens, interests and encumbrances. However, the Debtor or Reorganized Debtor may elect, in its absolute and sole discretion, to authorize escrow to pay the balance of Allowed Class 1A Claim from escrow consistent with the provisions of the Plan; providing that the holder of the Allowed Class 1A Claim does not include in the demand placed in escrow any penalty, fee, charge, demand or claim for unmatured interest or other disputed fees or charges, including any such penalty, fee, charge, demand or claim which is inconsistent with the treatment hereunder or disputed by the Debtor or Reorganized Debtor in its absolute and sole discretion. Any such disputed demand shall be resolved in the Bankruptcy Court which Bankruptcy Court shall retain exclusive jurisdiction over the parties, the Story Building Property and proceeds of escrow.<br><br>Any defenses, objections, counterclaims, rights, rights of offset or recoupment of the Debtor or the Estate with respect to such Claims shall vest in and inure to the benefit of the Reorganized Debtor.<br><br>The holder of the Allowed Class 1A Claim shall promptly execute and deliver any and all documents and take such other or further actions as are reasonably necessary, appropriate or requested by the Reorganized Debtor to effectuate the provisions of the Plan. |
| 1B | BLACKHAWK<br><br>Collateral description = Story Building Property<br><br>Schedule A Collateral value = $17,000,000<br><br>Scheduled D Claim amount = $72,011 | No. | Class 1B is impaired. | On the Effective Date, the Story Building Property shall be vested in the Reorganized Debtor, subject to the lien, if any, securing the Allowed Secured Claim of Class 1B, to the extent valid, perfected and unavoidable; and to the extent of the value of the claimholder's interest in the collateral as determined under Bankruptcy Code §506(a).<br><br>On the Effective Date or as soon |